IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

| | |
|---|---|
| Erik J. Nielsen,<br>Kathryn R. Nielsen | Case No. 09-04888-als7 |
| Debtors | Chapter 7 |
| Kathryn R. Nielsen | Adv. Pro. 10-30016-als |
| Plaintiff | |
| v. | |
| ACS, Inc. | |
| Defendant | |
| Educational Credit Management Corporation<br>Intervenor-Defendant | |
| Kathryn R. Nielsen | Adv. Pro. 10-30018-als |
| Plaintiff | |
| v. | |
| Iowa Student Loan Liquidity Corp.<br>Defendant | |
| Educational Credit Management Corporation<br>Intervenor-Defendant | |

**MEMORANDUM OF DECISION**
**(date entered on docket: May 24, 2013)**

Kathryn R. Nielsen ("Plaintiff" or "Nielsen") filed a joint voluntary chapter 7 proceeding with her spouse, Erik J. Nielsen, on October 7, 2009. On January 21, 2010, three separate adversary proceedings[1] seeking discharge of her student loans based upon undue hardship were

---

[1] On this same date, Debtor's spouse also filed an adversary proceeding: Erik J. Nielsen v. ACS, Inc., Case No. 10-30015. This matter is the subject of a Memorandum of Decision filed on February 28, 2012 and is currently the

filed by the Plaintiff, pro se.[2]    Trial was conducted in adversary proceeding numbers 10-30016 and 10-30018 on August 21, 2012.[3]

As previously ordered, the Plaintiff supplied a written narrative to serve as her initial direct testimony. Due to a prior trial consolidation order, the evidence in this case and in the adversary proceeding filed by Erik J. Nielsen is the same. Although the cases are no longer consolidated[4], pursuant to Plaintiff's request, all exhibits, arguments, statements and information whether supplied by Kathryn or Erik Nielsen, in their respective cases, have been reviewed and considered in the determination of this adversary proceeding.[5]

The court has jurisdiction of these matters pursuant to 28 U.S.C. sections 157(b)(1) and 1334. Upon review of the evidence and statements of the parties, the following findings of fact and conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. For the reasons set forth herein, the Debtor has failed to meet her burden of proof to discharge her student loan obligations based upon undue hardship.

## FACTS

Nielsen graduated from high school in 1995 with a number of college credits from her coursework at a local community college. She then enrolled for classes at the University of Nebraska-Omaha where she completed three semesters. Thereafter she attended Iowa Western

---

subject of a pending appeal to the Eighth Circuit Court of Appeals. The procedural posture of all four adversary proceedings are fully set forth in the Memorandum of Decision entered in Adversary Proceeding Number 10-30015.

[2] The Plaintiff in this proceeding has elected to represent herself, commonly referred to as acting "pro-se." Although a lawyer is not providing representation, the Plaintiff is not excused from compliance with the Code, Rules, court orders and directives. See Soliman v. Johanns, 412 F.3d 920, 922 (8th Cir. 2005); Schooley v. Kennedy, 712 F.2d 372, 373 (8th Cir. 1983).

[3] Adversary Proceeding 10-30017was dismissed by Order entered on August 9, 2011.

[4] See Memoranda of Decision filed on January 9, 2012.

[5] "Please note that all material facts relating to each above adversary number are relevant and ask for the Court to review and consider each respective narrative statement for Kathryn and Erik to be included for each other's statement as a married couple. The Exhibit List is being used for all adversary proceedings." Adversary Proceeding Number 10-30016, docket number 82. This request and the Court's acknowledgment of considering all exhibits and narrative testimony were again addressed at the start of Kathryn Nielsen's trial.

Community College where she obtained an Associates of Science Degree in biology. From 1997 through 2005, the Plaintiff was a student at the University of South Dakota ("USD"), where she acquired two degrees: a Bachelor of Science in Health Services Administration in 2000 and a Master of Business Administration in 2001. In 2005, Nielsen discontinued her pursuit of a Master's Degree in Public Administration, which would have been her third degree from USD. Twenty-three separate student loans were obtained by the Plaintiff during the time period of 1996 through 2005. Educational Credit Management Corporation ("ECMC") is the current holder of the loans, and is now owed over $100,000.[6]

## DISCUSSION

Student loans are only subject to discharge in bankruptcy under specific circumstances which show that repayment would constitute an "undue hardship on the debtor [or] the debtor's dependents." 11 U.S.C. § 523(a)(8). It is the Plaintiff's burden to establish an undue hardship by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 289-91 (1991).

The concept of "undue hardship" is not defined by the Bankruptcy Code. In this Circuit, the totality of a debtor's circumstances are examined for the purpose of determining undue hardship. See Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549 (8th Cir. 2003).[7] Three areas of inquiry are relevant to the totality of the circumstances: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case." Long v. Educ. Credit Mgmt. Corp.,

---

[6] According to Exhibit A, a total of $86,236 was borrowed. An estimate of the amount and use of the loan proceeds are as follows: Associate Degree in Applied Science $3,938; Undergraduate Degree $33,372; MBA $8,444; MPA $40,482.

[7] The test in the Eighth Circuit differs from the test adopted in Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987) which is utilized in other circuits.

322 F.3d at 554.  Each of these areas will be considered separately in the context of the evidence presented.

## TOTALITY OF CIRCUMSTANCES

1.     Past, Present and Future Financial Resources

Nielsen's post high school work history is minimal, if not non-existent.  After receiving her undergraduate degree, from USD, the Plaintiff pursued an opportunity with the U.S. Naval Services related to health services administration.  Nielsen was interviewed, but states that she was rejected because her height is above average, and she did not qualify under the Navy's strict height and weight ratio standards.  Her search for employment continued at local hospitals and clinics, where she apparently learned that even entry-level positions for the type of job she was seeking required a Master's degree.  It was with this understanding that Nielsen then undertook studies to earn such a degree, which she successfully obtained in 2001.

Plaintiff identifies work as an "Emissary with Gateway Computers" and an internship position with the City of Vermillion, South Dakota for which she was paid an hourly rate of $6.00.  No other details were provided related to these positions.  For approximately three months in 2004, Nielsen participated in an internship program in the Human Resources Department for the City of Palo Alto, California, where she was paid $16.50/hour.  The evidence does not disclose whether the internship ended, whether a longer-term position was available or how this internship related to Plaintiff's goals to obtain employment in the health industry. Although both of the Nielsens were employed in California, they decided to return to the Midwest.

Upon returning from California, Plaintiff's job search was not successful  In another apparent effort to improve her employment potential, the Plaintiff undertook study for a Master's

degree in Public Administration. Nielsen's reasoning for why this course of action would result in greater employment opportunities is not clear. Her pursuit of this advanced degree ended abruptly in 2005 due to difficulties with her first pregnancy.

Plaintiff is not currently employed. She states that she has been unsuccessful in finding work in the area in which she resides due to a limited number of job openings. Nielsen further attributes her lack of employment to her over-qualification for most positions, which is contrary to her written narrative which states she has been unable to find employment due to a lack of required work experience. In discovery, and during her testimony, Nielsen states that although she still has applications pending with various potential employers, she formally discontinued any search for employment in 2010. Other portions of the record reveal that Nielsen had not actually been seeking full time employment between the time period of 2005 and the date her bankruptcy was filed. Several reasons are offered to explain the end of her employment search, including ongoing medical issues, the cost of child care rendering any wages revenue neutral, and the considerable time spent preparing for her and her husband's adversary proceedings. See Nielsen v. ACS, Inc. (In re Nielsen), Case No. 09-04888-als7, Adv. Pro. 10-30015-als, 2012 Bankr. LEXIS 807, at *7-8 (Bankr. S.D. Iowa Feb. 28, 2012), aff'd, 473 B.R. 755 (B.A.P. 8th Cir. 2012), aff'd, No. 12-2925, 2013 U.S. App. LEXIS 8373 (8th Cir. Apr. 25, 2013).

Future earnings were not specifically addressed by Nielsen at the time of her trial. In spite of the suggestion by ECMC that Nielsen has a higher earning potential than her husband, she maintains that she is the children's primary care taker and that her husband is not currently capable of addressing all of their needs if she were employed full time. Her testimony suggests that she intends to breast feed her youngest child until the age of three which prevents her from working, although her basis for this conclusion was not explained. The Plaintiff and her husband

have recently decided to home school their four children. This decision is based upon concerns related to discipline at the local public schools and religious convictions. The Plaintiff admitted that her children do not have any medical conditions or special needs that require home schooling. No matter the reason, Nielsen does not anticipate she would be able to enter the workforce for at least eighteen years. Under these circumstances, the Plaintiff argues that she will have no future ability to make payment on her student loans.

        2.      Reasonable and Necessary Living Expenses.

The relevant inquiry under this factor is whether a debtor's expenses are reasonable, and if these expenses can be met under current income on an ongoing basis. "To be reasonable and necessary, an expense must be 'modest and commensurate with the debtor's resources.'" Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson), 571 F.3d 775, 780 (8th Cir. 2009) (citing In re DeBrower, 387 B.R. 587, 590 (Bank. N.D. Iowa 2008)). A review of monthly living expenses detailed in the original schedules and at trial support the conclusion that the family's monthly living expenditures are reasonable, necessary, and modest. As a general proposition, the cases addressing this issue provide that "[a] minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment." Brown v. Am. Educ. Servs., Inc. (In re Brown), 378 B.R. 623, 626 (Bankr. W.D. Mo. 2007). Although the monthly budget may be tight, based upon the family income, government benefits and tax refunds, the Nielsens are able to maintain a sufficient standard of living under this factor.

The Plaintiff urges the Court to find that possible future expenses prevent her from making payment on the student loans. The identical argument and evidence was presented in Erik J. Nielsen's trial. The Court adopts the same reasoning related to these potential expenses in this case as follows:

> [R]eference is made to the purchase of new tires for $637.72; two specialized queen mattresses for their children for $3,298; and a new roof and siding for a total of $7,000. An exhibit also reflects a quote to replace air conditioning damaged by lightning in the amount of $1,883.51. The record does not substantiate that these expenses are reasonable or necessary at the current time, nor are they routinely experienced on a regular basis. This evidence, standing alone, does not represent an undue hardship sufficient to discharge the student loan obligations.

Nielsen v. ACS, Inc. (In re Nielsen), Case No. 09-04888-als7, Adv. Pro. 10-30015-als, 2012 Bankr. LEXIS 807, (Bankr. S.D. Iowa Feb. 28, 2012), aff'd, 473 B.R. 755 (B.A.P. 8th Cir. 2012), aff'd, No. 12-2925, 2013 U.S. App. LEXIS 8373 (8th Cir. Apr. 25, 2013).

3. Additional Relevant Facts and Circumstances

This final area of inquiry evaluates an individual's overall situation in reaching a conclusion on whether a student loan may be discharged for undue hardship. A variety of issues may be considered:

> (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness.

In re Brown, 378 B.R. at 626-27 (citing VerMaas v. Student Loans of N.D. (In re VerMaas), 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); Morris v. Univ. of Ark., 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002)). Many of these factors can be determined without extensive factual discussion. The record clearly reflects that Nielsen has availed herself of deferment and forbearance options which have been approved. The Plaintiff has never made a payment on any

of the student loan debt owing to ECMC. Historically, she has experienced difficulty in obtaining gainful employment in her area of study. The family has minimized their expenses to the extent possible. Plaintiff's ratio of student loan obligations represent approximately one half of the total unsecured debt listed in her joint bankruptcy filing, but whether her primary motivation in seeking bankruptcy relief was to discharge her student loan debt is not clear.

Application of the remaining factors require more discussion in the context of the Plaintiff's specific circumstances. Nielsen asserts that medical conditions affecting her and her family constitute an undue hardship. Her narrative cites to an issue that developed in high school which sapped her energy and abilities. During high school, she was employed and obtained college credits, which does not support a conclusion of a limiting illness, let alone a current disability. She further points to conditions that developed in 2005 during her first pregnancy and, more recently, allergies and exposure to mold as grounds for her claim of undue hardship. The exhibits presented by the Plaintiff in support of these medical conditions are summarized as follows:

1. A lab report issued in 2002 which indicates that an anti-body for Epstien Barr was present (Exhibit 58). No information was provided related to suggested treatment or prognosis. There is a lack of medical records in evidence to support a specific diagnosis. The exhibits provide no basis for the conclusion asserted by the Plaintiff that her medical condition is ongoing or unresolved.

2. Records related to allergies and injection treatments during 2003 (Exhibits 59-1 through 59-13). No explanation accompanied these records. There is no information that supports a finding that the allergies suffered by Nielsen were debilitating. These treatments all appear to have occurred prior to the time of any alleged mold exposure. During that time, Plaintiff was actively pursuing her education and attempting to locate permanent employment.

3. Ultra Sound Reports during Plaintiff's pregnancy were admitted into evidence. These reports do not include any information referencing the cause of difficulties experienced early in the pregnancy (Exhibits 57-1

       through 57-8).  No other evidence was provided that supports a conclusion that there were medical consequences that developed during this pregnancy related to mold exposure.

    4.  In July and August 2005 the Plaintiff sought medical attention for skin issues (Exhibits 61, 62).  These reports and doctor notes do not identify a cause for her complaints, but it was recommended that a dermatologist be consulted.  The information does indicate that Nielsen had mold testing done on her home and "Needs a letter explaining mold situation and her condition".   No additional evidence was submitted related to whether confirmation was provided pursuant to this request.

  Notes from several doctor visits concerning the Plaintiff's oldest child indicate that the Nielsens reported a family history of ear problems, and had been pursuing homeopathic remedies rather than antibiotics to treat ongoing ear complaints. (Exhibits 66-2 through 66-14).  Although there is a reference in one exhibit that the ear problems may be mold related, it is unclear how this test relates to the medical information provided, and whether it was caused by environmental exposure or related to a bacterial infection. (Exhibit 66-1).  Upon review, and corrections, of her deposition, Nielsen states that her son has "significant health issues from his prior mold exposure." (Exhibit 44.3 referencing pg. 25 line 23).  This opinion appears to rely solely on the Plaintiff's interpretation of the limited medical information admitted at trial.  Although expert testimony is not required, the Plaintiff must present more substantial evidence of a medical condition to show that she has an undue hardship under the totality of the circumstances test.  See Shaffer v. United States Dep't of Educ. (In re Shaffer), 481 B.R. 15, 21 (B.A.P. 8th Cir. 2012) (quoting Cline v. Illinois Student Loan Assistance, 248 B.R. 347,350 (B.A.P. 8th Cir. 2000)) (holding that expert testimony is not required but the evidence must support a finding of undue hardship).

  Various documents were submitted by the Plaintiff to establish the consequences of mold exposure (See Exhibits 67-1 through 72).   These items include a testing report and articles

obtained from the internet that discuss the hazards of mold. Whether this information can be used to causally link the alleged mold illnesses experienced by the Plaintiff was discussed in Nielsen's husband's case, and the reasoning adopted in this Court's ruling in that case is equally applicable here.

> The Plaintiff included articles discussing problems and ailments involving mold and actions which can be taken to avoid potential mold-related medical issues. Much of this information is derived from a mold remediation consultant based out of Knoxville, Tennessee. The symptoms and recommendations described are not medically based and are of questionable credibility due to their source. Undue hardship cannot be based upon reliance on general information and conclusions related to the potential dangers of mold, in the absence of medical evidence or testimony

Nielsen v. ACS, Inc. (In re Nielsen), Case No. 09-04888-als7, Adv. Pro. 10-30015-als, 2012 Bankr. LEXIS 807, (Bankr. S.D. Iowa Feb. 28, 2012), aff'd, 473 B.R. 755 (B.A.P. 8th Cir. 2012), aff'd, No. 12-2925, 2013 U.S. App. LEXIS 8373 (8th Cir. Apr. 25, 2013) (citing Hangsleben v. United States of America (In re Hangsleben), No. 10-30178, Adv. No. 10-7018, 2011 Bankr. LEXIS 2277, 2011 WL 2413340, at *6 (Bankr. D.N.D. June 10, 2011)). Plaintiff contends that mold issues and the cost associated with avoiding mold growth in her home prevent her from moving to another area to obtain employment. When asked about the modifications made to her home, Nielsen explained that all carpet was removed, non-toxic paint with essential oils was used, grating was performed outside the home, and an air purifier was installed. The record fails to include any detail of the expenditures to make these changes and does not explain why similar revisions could not be made on an economical basis to a new residence.

The Plaintiff has not presented sufficient documentation or evidence to establish that she, or any member of her family, suffers from a disability, permanent or otherwise, which would

qualify for a finding of undue hardship.  See Walker v. Sallie Mae Serv. Corp. (In re Walker), 650 F.3d 1227 (8th Cir. 2011) (where debtor could not work full time because of the extensive needs of her two autistic children and could not make the monthly payments under an ICRP, the court discharged her student loans); Shaffer v. United States Dep't of Educ. (In re Shaffer), Case No. 10-01926-als7, Adv. Pro. 10-30109-als, 2011 Bankr. LEXIS 4724 (Bankr. S.D. Iowa Dec. 1, 2011), aff'd, Shaffer v. United States Dep't of Educ. (In re Shaffer), 481 B.R. 15 (B.A.P. 8th Cir. 2012) (court discharged debtor's student loans when the debtor suffered from mental health issues including eating disorders, depression, self-harm (cutting), and anxiety, which adversely affected her academic endeavors and her ability to maintain employment).  Cumberworth v. United Stated Dep't of Educ. (In re Cumberworth), 347 B.R. 652 (B.A.P. 8th Cir. 2006) (permanently disabled debtor was able to discharge her student loans); Ford v. Student Loan Guar. Found of Ark. (In re Ford), 269 B.R. 673 (B.A.P. 8th Cir. 2001) (court discharged loans when 62-year old debtor had a disability that limited her earning capacity); Brooks v. Educ. Credit Mgmt. Corp. (In re Brooks), 406 B.R. 382 (Bankr. D. Minn. 2009) (court discharged loans when the debtor was diagnosed with alcohol dependence, depression, and post-traumatic stress disorder and did not have the ability to hold steady employment); Fahrer v. Sallie Mae Serv. Corp. (In re Fahrer), 308 B.R. 27 (Bankr. W.D. Mo. 2004) (debtor was allowed to discharge her loans because she was unable to work full time because she had to care for her husband's medical problems, including heart problems, high blood pressure, amyotrophic lateral sclerosis, diabetes, kidney problems, depression, anxiety disorder and prostate cancer).

In ECMC v. Jesperson, the court stated, "[a] debtor is not entitled to an undue hardship discharge of student loan debts when his current income is the result of self-imposed limitations, rather than lack of job skills, and he has not made payments on his student loan debt despite the

ability to do so." 571 F.3d at 782. The court held that Jesperson's young age, good health, number of degrees, marketable skills, and lack of substantial obligations to dependents or mental or physical impairments weigh in favor of not granting an undue hardship discharge. Id. at 780. Nielsen is young, has no diagnosed mental or physical impairments which prevent her from working and has a number of marketable degrees. In addition, when funds have been available to her, the Plaintiff preferred to repay family members rather than to reduce, in any amount, however small, her student loan obligations. Trial Tr. 88-89, Aug. 21, 2012. The evidence supports a finding that Nielsen has made a decision to continue her education, rather than enter the work force if a job was unrelated to her specific interests or did not meet her pay expectations.

In In re Shaffer, this Court discharged the debtor's student loans. Shaffer v. United States Dep't of Educ. (In re Shaffer), Case No. 10-01926-als7, Adv. Pro. 10-30109-als, 2011 Bankr. LEXIS 4724, *12 (Bankr. S.D. Iowa Dec. 1, 2011), aff'd, Shaffer v. United States Dep't of Educ. (In re Shaffer), 481 B.R. 15 (B.A.P. 8th Cir. 2012). The court held that Shaffer's circumstances were not self-imposed based upon her diagnosed health issues and employment history, and that she did not have the ability to make the payments on her student loans and still maintain a minimal standard of living. Id. at *15-16. Nielsen's case is very different from Shaffer's because Nielsen suffers from no diagnosed medical condition that affects her ability to work. Furthermore, unlike Shaffer's limitations, many of Nielsen's income limitations can be classified as self-imposed.

In this Circuit, the availability of the ICRP is a factor, but cannot be the only factor, that may be considered when evaluating whether student loans may be discharged for undue hardship. Lee v. Regions Bank Student Loans (In re Lee), 352 B.R. 91, 95 (B.A.P. 8th Cir.

2006). ECMC presented evidence that the Plaintiff qualified for a zero monthly payment under the Income Contingent Repayment Program (ICRP). In spite of this option, Nielsen has declined to enroll based upon her belief that she does not qualify based upon her deferment status and that substantial future tax consequences make this an undesirable option.

> This conclusion appears to be based upon possible tax consequences that could arise due to debt forgiveness. The Nielsens, admittedly, have not engaged an accountant or other tax professional to assist them in making a determination of potential tax liability resulting from the Plaintiff's participation in the ICRP. Instead, they seek a determination that there will be no tax liability from the Defendant (or the IRS). Because no one, including the Plaintiff, can know what his financial situation will be in 2037, a calculation of any tax liability resulting from debt forgiveness is impossible at this time. See 26 U.S.C. § 108(a)(1)(B). The mere possibility of tax consequences at the expiration of the 25-year repayment period is not dispositive of the issue of whether the ICRP represents a viable avenue for repayment of student loan debt.

Nielsen v. ACS, Inc. (In re Nielsen), Case No. 09-04888-als7, Adv. Pro. 10-30015-als, 2012 Bankr. LEXIS 807, (Bankr. S.D. Iowa Feb. 28, 2012), aff'd, 473 B.R. 755 (B.A.P. 8th Cir. 2012), aff'd, No. 12-2925, 2013 U.S. App. LEXIS 8373 (8th Cir. Apr. 25, 2013). Nielsen's hesitancy to participate in the ICRP when it will not require any monthly payment exhibits a desire to avoid her responsibility for payment on the student loans should her financial situation improve in the future.

## CONCLUSION

Nielsen gives a variety of reasons to support her conclusion that she qualifies for discharge of her student loans based upon undue hardship. These explanations range from over-qualification, under-qualification, geography, locality, her height, child care expenses, home schooling decisions and undiagnosed medical conditions which in her opinion impact her and her

family. While the Court agrees that some of these items may be outside the Plaintiff's control, there are many that are self-imposed restrictions.

Nielsen has not engaged in meaningful employment since 1995, a period of seventeen years. Based upon Nielsen's ability to obtain internship positions, it appears that she is capable of obtaining work. This is not a case where the Plaintiff has used her best efforts to attempt to find employment, make any payments or engage in conduct that represents a meaningful or sincere effort to repay her student loan obligations. It is plausible to conclude that it was not a shortage of any job opportunities that prevented employment during this extended time period, but rather the lack of what the Plaintiff believed were suitable jobs. Instead of engaging in some type of employment, Nielsen decided to pursue advanced degrees, thereby increasing her student loan obligations. Based upon her education, and current age, it is unrealistic to conclude that the Plaintiff's employment prospects will never improve. In spite of the fact that no jobs may currently be available or suitable under Nielsen's circumstances, based upon her age, the possibility of future economic improvement and job opportunities, the prospect of her future employment should not be completely foreclosed at this time. The option available for a zero payment plan under the ICRP does not impose an additional burden on Nielsen's current finances, but it also affords an opportunity for ECMC to be repaid if Nielsen's financial situation changes.

For the reasons stated herein, the Plaintiff has failed to meet her burden to establish an undue hardship under a totality of her circumstances.

IT IS HEREBY ORDERED

1.  The Plaintiff's request for discharge of her student loans based upon 11 U.S.C. section 523(8) for undue hardship is denied;

2. The complaint is dismissed; and

3. The parties shall bear their own costs.


/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge


Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter Case
Kathryn Nielsen, Plaintiff